UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

GERALD R. SUTTON, JR.,

        Plaintiff,

v.       Case No. 5:05-cv-237-Oc-10GRJ

MICHAEL J. ASTRUE,[1] Commissioner of
Social Security,

        Defendant.
_____/

## REPORT AND RECOMMENDATION[2]

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income. ("SSI".) (Doc. 1.) The Commissioner has answered (Doc. 10), and both parties have filed briefs outlining their respective positions. (Docs. 18 & 19.) For the reasons discussed below the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB and SSI on November 20, 2001, alleging a disability onset date of August 1, 2001. (R. 243-45, 255-58.) Plaintiff's application was

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

denied initially (R. 251-52, 264-65) and upon reconsideration (R. 262). Plaintiff requested a hearing before an Administrative Law Judge, which was held on April 11, 2003. (R. 36-66.) On July 24, 2003, following the hearing, Administrative Law Judge James R. Ciaravino (the "ALJ") issued a decision unfavorable to Plaintiff. (R. 15-25.) Plaintiff's request for review of that decision was denied by the Appeals Council on March 17, 2005, rendering the ALJ's decision the final decision of the Commissioner. (R. 10-13.)

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[3] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[4]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[5] The district court must view the evidence as a whole, taking

---

[3] See 42 U.S.C. § 405(g).

[4] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[5] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

into account evidence favorable as well as unfavorable to the decision.[6] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[7]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[8] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[9]

The ALJ must follow five steps in evaluating a claim of disability.[10] First, if a claimant is working at a substantial gainful activity, she is not disabled.[11] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does

---

[6] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[7] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[8] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2003) (All further references to 20 C.F.R. will be to the 2003 version unless otherwise specified.).

[9] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[10] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[11] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[12] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[13] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[14] Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[15]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[16] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[17] The Commissioner may satisfy this burden by pointing to the Grids for a conclusive determination that a claimant is disabled or not disabled.[18]

---

[12] 20 C.F.R. § 404.1520(c).

[13] 20 C.F.R. § 404.1520(d).

[14] 20 C.F.R. § 404.1520(e).

[15] 20 C.F.R. § 404.1520(f).

[16] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[17] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:
In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[18] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[19] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[20]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[21] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[22] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff, born on August 17, 1948 (R. 255), was fifty-four at the time of the hearing. (R. 41.) He has a high school education and vocational training in auto mechanics, diesel and welding. (R. 19, 46.) Plaintiff moved to Florida to help his father run a horse farm. (R. 47.) After several years his father had to sell the farm because

---

[19] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[20] Walker, 826 F.2d at 1003.

[21] Wolfe, 86 F.3d at 1077-78.

[22] See id.

Plaintiff was unable to maintain the horses due to back pain. (R. 48, 51.) Plaintiff found a lighter job and last worked as a funeral/cemetery sales person. (R. 51.) His duties included selling plots and training staff. (R. 52.)

Plaintiff alleges that he became disabled on August 1, 2001 but continued to work until October 3, 2001, when his "back flared up". (R. 52-55.)

This appeal concerns Plaintiff's alleged severe back pain and its effect on his ability to perform work. Thus, the Court will focus on those portions of the medical record relevant to Plaintiff's alleged back problems and his complaints of pain.

In June of 1998, Plaintiff sought orthopedic treatment due to a three-year history of mid and low back pain. (R. 106.) Chester E. Sutterline, III, M.D. diagnosed Plaintiff with lumbar spondylosis[23] with radiculopathy,[24] degenerative joint disease, and a herniated nucleus pulposus.[25] (R. 117.) Dr. Sutterline recommended physical therapy and prescribed Plaintiff a non-steroidal anti-inflammatory medication. _Id_.

The record reflects that Plaintiff underwent chiropractic treatment from September 2001 through October 2001 for complaints of a stiff neck, constant pain in the upper and middle back, difficulty sleeping and mild numbness in the left arm. (R. 146.) Plaintiff was recommended to start back exercises and begin a diet for weight loss. The report also notes that Plaintiff was using Wobenzym and that he was improving. _Id_. A radiology study dated September 20, 2001 demonstrated early

---

[23] Ankylosis of the vertebra; often applied nonspecifically to any lesion of the spine of a degenerative nature. Lippincott, Williams & Wilkins, Stedman's Medical Dictionary (27th ed. 2000).

[24] Disorder of the spinal nerve roots. _Id_.

[25] A "slipped disk". _Id_.

degenerative changes but that vertebral body heights, foraminal openings and joint spaces appeared to be preserved. (R. 147.)

The Social Security Administration referred Plaintiff for an evaluation with Lawrence R. Field, D.O. on April 23, 2002. (R. 161-63.) Plaintiff complained of neck and middle and lower back pain present for the previous seven years. (R. 161.) Dr. Field noted a decreased range of motion in the cervical and lumbar spine due to pain. (R. 162.) Dr. Field diagnosed Plaintiff with a muscle strain of the cervical, thoracic and lumbar spine, morbid obesity and balance abnormality. *Id.* Additionally, Dr. Field noted that there were no functional ability impairments with the exception of balance problems.

In May of 2002, Plaintiff continued to complain of back pain. (R. 159.) An MRI of the cervical spine showed mild degenerative disk spacing with small annular bulges. *Id.* Soon thereafter, two state agency medical experts, Larry Callini, Jr., M.D. (R. 155) and Donald Morford, M.D., F.A.C.P. (R. 171) evaluated the records and opined that Plaintiff could perform light work with postural limitations and needed to avoid machinery or heights. (R. 148-155, 164-171.)

During the hearing, Plaintiff testified that he has difficulty driving at times and sometimes cannot walk or walks very slowly. (R. 46.) Plaintiff described his back pain as a "butter knife in the middle of my back pressing in". (R. 59.) He also complained of numbness in his buttocks and tingling in his legs. (R. 60.) Plaintiff testified that prolonged sitting and standing was prohibitive. (R. 61.) The ALJ recommended the Plaintiff go for a consultative orthopedic evaluation to further develop the record. (R. 64-65).

On April 24, 2003, a letter was sent to Plaintiff reminding him that the ALJ had requested an orthopedic evaluation. (R. 21.) The Disability Determinations Office scheduled the examination for June 19, 2003 and on June, 10, 2003, Plaintiff called the office stating that he "wasn't going to anymore exams for DDS...we had all the information we needed and he was just too much pain and too fed-up to go." Id. Again, the Disability Determinations Office advised Plaintiff to attend the examination, which Plaintiff missed. Id.

After reviewing the evidence, including portions of the medical records and Plaintiff's testimony, the ALJ found that Plaintiff had degenerative disc disease with a herniated nucleus pulposus, mild degenerative disc disease of the cervical spine and morbid obesity. (R. 21.) The ALJ concluded that these conditions were severe within the meaning of the Regulations but not severe enough to meet the list of impairments in Appendix 1, Subpart P, Regulations No. 4. Id. Then considering Plaintiff's symptoms, pain and clinical findings, the ALJ determined that Plaintiff was not functionally limited by the pain. (R. 22.)

The ALJ accorded weight to the opinion of the State Agency Physicians - that Plaintiff could stand, walk and sit six hours in an eight-hour workday and lift 20 pounds occasionally. The ALJ further found that "claimant's allegations and subjective symptoms are out of proportion and inconsistent with the medical evidence and are not fully credible." (R. 22.)

The ALJ then proceeded in the sequential analysis and found that Plaintiff could perform his past relevant work as a salesperson for a funeral and cemetery property. (R. 23.) The ALJ stated that those job duties included telemarketing, setting up

appointments, occasionally walking door to door and lifting slightly over 20 pounds. *Id*. Accordingly, because the ALJ found that Plaintiff could perform his past relevant work the ALJ concluded that Plaintiff was not disabled.

Following the unfavorable decision by the ALJ, Plaintiff began treatment with the Family Care Center at the Villages on September 11, 2003. (R. 198-209.) At the initial evaluation it was noted that Plaintiff had multiple trigger points in the lumbar sacral junction. (R. 205.) Plaintiff was diagnosed with chronic low pack pain, which the doctor noted was secondary to the degenerative disc disease and myalgia. (R. 205.) Plaintiff was prescribed physical therapy. Id. Also in September 2003, Plaintiff was evaluated by the Sunmed Healing and Injury Center for chronic back pain with all modes of movement, including sitting and bending. (R. 194.) He was prescribed therapy two times a week for four weeks. (R. 195.)

Plaintiff's physician from the Family Care Center completed a RFC questionnaire regarding Plaintiff's impairments on October 10, 2003. (R. 219-22.) The doctor found that Plaintiff suffered from back pain and herniated disc disease with poor prognosis. (R. 219.) The doctor noted that the clinical diagnosis supported Plaintiff's complaints of pain. (R. 219-20.) As a result, the doctor concluded that Plaintiff could not sit, stand or walk for more than two hours in an eight-hour workday and could not lift any amount of weight. (R. 221.) Additionally, the doctor noted Plaintiff's inability to even endure a low stress job due to his back pain. (R. 220.)

Plaintiff provided this new evidence to the Appeals Council. (R. 4.) The Appeals Council denied review of the ALJ's decision, concluding that the additional evidence did not provide a basis for changing the ALJ's decision. (R. 5-7.)

## IV. DISCUSSION

Although Plaintiff separates his argument into three issues, Plaintiff's arguments essentially raise two issues. Those issues are: (1) whether the Appeals Council erred by not considering the medical evidence from Family Care Center concerning Plaintiff's treatment after the hearing concerning Plaintiff's RFC, and (2) whether the ALJ properly evaluated Plaintiff's complaints of pain due to his back impairment.[26]

### A. The Appeals Council Did Not Err in Denying Review

Plaintiff argues that the Appeals Council (the "AC") erred in denying review of the ALJ's decision by failing to consider the after acquired medical evidence from the Family Care Center. Plaintiff contends that this after acquired evidence undermines the ALJ's analysis of Plaintiff's RFC and must be evaluated on remand.

The AC will review a case if there appears to be an abuse of discretion by the ALJ; there is an error of law; the ALJ's actions, findings, or conclusions are not supported by substantial evidence; or there is a broad policy or procedural issue which may affect the general public interest.[27] It is well settled that when the AC denies review of the ALJ's decision, the AC's decision is subject to judicial review for error.[28] When reviewing whether the AC erred in denying review, courts look to the pertinent evidence

---

[26] The Court has combined into one issue Plaintiff's argument with regard to the ALJ's pain analysis and the ALJ's finding that Plaintiff was "not totally credible".

[27] 20 C.F.R. § 416.1470; Parker v. Bowen, 788 F.2d 1512, 1518 (11th Cir. 1986) (en banc).

[28] Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998); Keeton, 21 F.3d at 1067-68; Williams v. Commissioner of Social Security, 407 F. Supp. 2d 1297, 1303 (M.D. Fla. 2005).

to determine if the evidence is new and material, which is the "kind of evidence the [AC] must consider in making its decision whether to review an ALJ's decision."[29]

The AC, however, only has a duty to review evidence relating to a claimant's condition prior to the date of the ALJ's decision.[30] If a claimant submits evidence, which does not relate to the period on or before the administrative law judge hearing decision, the AC will return the additional evidence to the plaintiff with an explanation as to why it did not accept the additional evidence and will advise the plaintiff of his right to file a new application.[31] Thus, in situations where the medical condition of the claimant after the hearing decision worsens the claimant is not precluded from pursuing a claim for disability but he or she must do so through a new application and not by submitting new medical evidence relating to the claimant's condition after the period considered by the ALJ.

In the instant case, Plaintiff obtained and submitted medical evidence to the AC several months after the ALJ's hearing decision. (R. 4.) The AC denied Plaintiff's request for review and stated that it "considered the additional evidence" and "found that this information does not provide a basis for changing the Administrative Law Judge's decision." (R. 6.)

A review of the after acquired medical evidence at issue - the medical records from the Family Care Center, including the Physical Residual Functional Capacity

---

[29] Falge, 150 F.3d at 1324.

[30] 20 C.F.R. § 416.1470(b); 20 C.F.R. § 404.970(b); Keeton, 21 F.3d 1066; Hyde v. Bowen, 823 F.2d 456, 459 n. 4 (11th Cir. 1987) (finding that evidence is material if it addresses the plaintiff's condition prior to the date of the ALJ's order).

[31] 20 C.F.R. § 416.1476(b)(1).

Questionnaire, referencing Plaintiff's September 11 and 15, 2003 examinations[32] - do not relate to or even mention Plaintiff's condition for the period prior to the ALJ's hearing decision on July 24, 2003. The RFC questionnaire merely documents Plaintiff's current impairments and condition as observed by medical personnel at The Family Care Center on October 10, 2003. There is nothing in the questionnaire that addresses Plaintiff's prior condition or purports to relate his then condition back to an earlier period. Thus, the AC had no duty to consider this evidence because it related to Plaintiff's condition for the period subsequent to the ALJ's decision.

The Court's inquiry could end there. However, even assuming *arguendo* that the medical records from the Family Care Center were interpreted to be relevant to Plaintiff's condition retroactively to the time period considered by the ALJ, the AC still did not err by failing to remand the matter to the ALJ for further proceedings.

Where new evidence relating to the period considered by the ALJ is submitted to the AC and the Plaintiff challenges the decision of the AC to deny review, the Court reviews the decision of the AC denying review utilizing the analysis relevant to a remand under sentence six of 42 U.S.C. § 405(g).[33] Under sentence six to obtain remand on the

---

[32] R. 219-22.

[33] Falge, 150 F.3d 1323; Baquer v. Apfel, 65 F. Supp. 2d 1345, 1354 (M.D. Fla. 1999). Contra Williams, 407 F. Supp. 2d 1297, 1303 (finding that the AC's decision was not supported by substantial evidence and remanding under sentence four of Section 405(g)). However, analyzing whether the AC erred under *sentence four* does not make sense for public policy reasons - and as underscored by the facts in this case - would provide claimants with "two bites at the apple." If a claimant was permitted to submit new evidence to the AC relating to after acquired medical treatment generated after an unfavorable decision by an ALJ, claimants would have the opportunity to make a test run of their case before the ALJ and then if their claim was denied attempt to bolster their case with brand new medical evidence. Such a process would make the ALJ's decision advisory and would give claimants an improper back door means of appeal. *See,* Milano v. Bowen, 809 F.2d 763, 767 (11th Cir. 1987) (stating that the good cause requirement was designed to "prevent claimants from attempting to withhold evidence" or encouraging them to obtain after-acquired evidence and then use such evidence as a "backdoor" means of appeal.)

basis of new evidence the plaintiff must establish that: (1) there is new, non-cumulative evidence; (2) the evidence is material - relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) good cause exists for failure to submit the evidence at the administrative hearing.[34]

Generally, evidence is considered new and non-cumulative if it did not exist at the time of the administrative hearing, or was not previously asserted.[35] There is no doubt that this evidence is new - generated in October 10, 2003 from information obtained during September 2003 examinations. It is questionable, however, as to whether this evidence is non-cumulative. The record contains two other RFC assessments, recorded by non-examining physicians that the ALJ considered. While there are differences in the RFC assessment dated October 10, 2003, it relates to subsequent complaints during a time when Plaintiff's self reported complaints were escalated.

The new, non-cumulative evidence also must be material - relevant and probative so that there is a reasonable probability that it would change the administrative result.[36] In view of the fact that the October 2003 questionnaire notes that Plaintiff would not be capable of even low stress jobs, this evidence arguably would satisfy the materiality requirement in the analysis.

---

[34] Falge, 150 F.3d 1320, 1323; Cannon v. Bowen, 858 F.2d 1541, 1546 (11th Cir. 1988).

[35] Cannon, 858 F.2d at 1546; Blake v. Massanari, 2001 WL 530697, *8 (S.D. Ala. April 26, 2001).

[36] See supra note 34.

However, even assuming that Plaintiff could establish that the after acquired evidence is new, non-cumulative and material, he is still required to show that good cause exists for the failure to submit the evidence at the administrative hearing.[37] Good cause may be established upon a showing that the evidence did not exist until after the conclusion of the administrative proceedings.[38] However, the Eleventh Circuit has also observed that "the good cause requirement reflects a Congressional determination to prevent the bad faith manipulation of the administrative process."[39] As a result, courts generally apply the good cause standard while keeping in mind the purpose of the standard. Thus, where a plaintiff procrastinates in obtaining evidence that is readily available suggesting a bad faith manipulation of the administrative process good cause is not present.[40]

Plaintiff suggests - without any explanation - that the after acquired medical evidence was obtained because "Mr. Sutton was unable to obtain medical treatment for several months."[41] A review of the hearing transcript before the ALJ discloses something different. Rather than being unable to obtain medical treatment Plaintiff actually refused to submit to a consultative orthopedic evaluation scheduled by the Disability Determinations Office ("DDO") During the hearing, the ALJ instructed Plaintiff

---

[37] 42 U.S.C. § 405(g); Falge, 150 F.3d at 1323; Cannon, 858 F.2d at 1546.

[38] Hyde, 823 F.2d at 459; Cannon, 858 F.2d at 1546.

[39] Milano v. Bowen, 809 F.2d 763, 767 (11th Cir. 1987) (stating that the good cause requirement was designed to "prevent claimants from attempting to withhold evidence" or encouraging them to obtain after-acquired evidence and then use such evidence as a "backdoor" means of appeal) (*emphasis added*).

[40] *Id.* at 767.

[41] Doc. 18, p. 5.

to visit an orthopedic specialist to seek a medical evaluation regarding his middle back pain in order to supplement the medical record.[42] However, after several requests by the DDO for Plaintiff to attend a consultative orthopaedic examination scheduled for June 19, 2003, Plaintiff advised the office of Disability Determinations that he "wasn't going to anymore exams ... [they] had all the information [they] needed and he [Plaintiff] was ... too fed up to go."[43] Plaintiff never attended the appointment. Instead, Plaintiff waited to receive the disability decision by the ALJ, and then several months later and only after receipt of the unfavorable decision, the Plaintiff decided to go to a doctor of his choice for an evaluation.

This scenario is a text book example of the reason there is a good cause requirement for considering after acquired evidence. The Plaintiff was not unable to obtain the medical evidence but rather intentionally elected not to submit to a consultative orthopedic examination in the hope that he would receive a favorable decision from the ALJ. Only after he found out that he had failed to prove disability did Plaintiff then obtain a consultative examination.

Accordingly, for this reason the Court concludes that the Plaintiff has failed to establish good cause for submitting the after acquired evidence to the Appeals Council and thus this matter should not be remanded to the ALJ to consider the after acquired evidence.

---

[42] R. 65.

[43] R. 21.

**B. The ALJ Properly Evaluated Plaintiff's Subjective Complaints of Pain**

Separate from Plaintiff's reliance upon the after acquired evidence, the Plaintiff also challenges the decision of the ALJ on the grounds that the ALJ improperly evaluated Plaintiff's subjective complaints of pain. The Court disagrees and finds that the ALJ engaged in an appropriate evaluation of Plaintiff's subjective complaints of pain.

The law in the Eleventh Circuit is well settled concerning the proper analysis of a claimant's subjective complaints of pain. The Eleventh Circuit has set forth a three-part test for determining when a disability may be established based upon subjective complaints of pain.[44] The "pain standard" requires that the plaintiff first produce medical or other evidence of an underlying medical condition. Then the plaintiff must demonstrate either that objective medical evidence confirms the severity of the alleged pain arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[45] "Pain alone can be disabling, even when its existence is unsupported by objective evidence."[46] However, a claimant's subjective complaints of pain do not conclusively establish a disability unless accompanied by medical evidence.[47]

---

[44] Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

[45] Id.

[46] Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

[47] 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms *shall not alone be conclusive evidence of disability* as defined in this section; there *must* be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is
(continued...)

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[48] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[49]

In the instant case, the ALJ applied the Eleventh Circuit's pain standard. The ALJ met the "threshold"[50] assessment by noting that during the relevant period of time Plaintiff presented objective medical evidence that established that degenerative disc disease with a herniated nucleus pulposus L5-S1, mild degenerative disc disease of the cervical spine and morbid obesity were medical impairments. Once Plaintiff met this initial burden, the ALJ correctly applied the second part of the pain standard and found that Plaintiff's complaints regarding his level of pain and inability to work were "out of proportion and inconsistent with the medical evidence and are not fully credible."

In making this finding, the ALJ conducted a thorough examination of Plaintiff's medical history, including Plaintiff's complaints of pain. The ALJ appropriately noted Plaintiff's "complaints of a stiff neck, constant pain in the upper and middle back."[51]

---

(...continued)
    under a disability") (*emphasis added*).

    [48] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

    [49] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

    [50] Marbury, 957 F.2d at 839.

    [51] R. 20.

Additionally, the ALJ noted that Plaintiff's chief complaint was that "he feels his pain is like a knife sticking in his back."[52]

In accordance with the pain standard, the ALJ then articulated his reasons for discounting Plaintiff's complaints of pain. The ALJ found that the medical evidence showed minimal physical findings and that there were no reported side effects from medications. The ALJ expressly found that Plaintiff "does have impairments that limit his activities such as heavy lifting. However, the clinical findings resulting from these impairments do not appear to be of a degree capable of producing pain or limitations of incapacitating proportions."

Specifically, the ALJ relied upon Dr. Hines' progress notes from October 2001, which illustrated that Plaintiff "seemed to be doing better overall and his pain had lessened with intensity." The ALJ also relied upon the September 2002 State Agency Physician's determination regarding Plaintiff's RFC to perform light work. Dr. Field's evaluation of Plaintiff's medical records concluded that Plaintiff had no significant physical impairments.

Additionally, the ALJ relied upon the fact that Plaintiff's own treating physicians, including Dr. Sutterline,[53] placed no restrictions on Plaintiff. Furthermore, in rejecting Plaintiff's disabling complaints of pain, the ALJ properly noted that Plaintiff's claims of severe limitations due to back pain were not consistent with the Plaintiff's activities of daily living, including driving, shopping, yard work, gardening and taking care of his personal needs. While the Plaintiff's activities of daily living in isolation are not

---

[52] R. 21.

[53] R. 106-118.

conclusive evidence that he was not disabled during the relevant period of time, these activities are, nonetheless, consistent with the ability to perform light level work.

In sum, the Court concludes that the ALJ followed the Eleventh Circuit pain standard in analyzing whether the Plaintiff's subjective complaints of pain were credible. The ALJ provided adequate reasons for rejecting Plaintiff's testimony that his back pain severely limited his ability to sit, stand or walk and the ALJ's credibility finding was based upon the medical evidence and other substantial evidence of record.

## VI.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Ocala, Florida, on March 9, 2007.

*[signature]*
GARY R. JONES
United States Magistrate Judge

Copies to:
  The Honorable Wm. Terrell Hodges
  Senior United States District Judge

  Counsel of Record